## STURTEVANT *& a. v.* ROOT.

In an action on the case for defamation, the second count alleged that the defendant, "in a certain discourse which he then and there had of and concerning the plaintiffs," did falsely speak and publish "of and concerning the said Elizabeth," (the plaintiff's wife,) certain defamatory words. *Held,* that there was a sufficient statement of a *colloquium.*

The third count alleged that the defendant spoke of and concerning Elizabeth, the wife of the plaintiff, George Sturtevant, the following words: "Paget left his wife at my father's, and then went down to George's with his horse and sleigh, and wanted George to take care of his horse, and while he was gone, Paget and his wife went into the bed-room together, and when George came back from the barn, he found them both there." *Held,* that the words imputed the crime of adultery to the plaintiff's wife, and were actionable.

CASE, for slanderous words spoken of Elizabeth, the wife of the plaintiff.

The second count alleged that the defendant, on the tenth day of January, 1851, "in a certain discourse which he then and there had of and concerning the plaintiffs, in the presence and hearing of divers persons, did maliciously and falsely speak and publish of and concerning the said Elizabeth, &c., &c.

The defendant objected that this count was defective for want of a proper *colloquium*.

In the third count, it was alleged that the defendant spoke and published of and concerning the said Elizabeth the following false and defamatory words : " Paget left his wife at my father's and then went down to George's with his horse and sleigh, and wanted George to take care of his horse, and while he was gone, Paget and his wife went into the bed-room together, and when George came back from the barn, he found them both there."

The defendant objected to this count that it did not set out any actionable words.

No objection was taken to the first count. The jury returned a general verdict for the plaintiffs upon all the counts.

The defendant moved in arrest of judgment for the reasons above mentioned.

*Cushing*, for the defendant.

The doctrine of the law in regard to the use of the innuendo in actions for slander is sufficiently explained in Starkie on Slander 290 *et seq.* *Hawkes* v. *Hawkey*, 8 East. 427.

It will appear by the authorities that the innuendo cannot add to or enlarge the meaning of words.

It can only explain them by reference to what has gone before, and in order to this there must be an averment that there was a conversation, i. e. a *colloquium* about the matters referred to.

To make the second count good, there should have been averred a *colloquium* about the child, &c. The words alleged in that count are, " I have been talking round about Sturtevant's wife for fun, for the purpose of making them mad, but it is of no use for them to deny that that last child of theirs belongs to John Paget."

The words in the last count do not naturally import any actionable slander.

*Gates & Ticknor*, for the plaintiffs.

The second and third counts are sufficient and good.

In the second count the *colloquium* is a certain discourse had of the plaintiffs, and the slanderous words are alleged as spoken against them. It is not necessary to aver a *colloquium* about the child any more specifically than is expressed in the words, "in a certain discourse," for there is no more reference to the child than to John Paget.

The third count is good. It is not necessary that the words should convey on the face of them an open and direct imputation. Starkie on Slander, 27, 28, 36. If the innuendo express the sense as understood by the hearers, it will be good. Starkie on Slander, 221; *Harris* v. *Burley*, 8 N. H. Rep. 256.

In the second and third counts the charges alleged are the same in substance as those in the first count, i. e. adultery, and may refer to the first count. *Hitchcock* v. *Munger*, 15 N. H. Rep. 100.

GILCHRIST, C. J. In an action on the case for defamation, the declaration must show by a *colloquium*, or otherwise, that the words were spoken " of and concerning the plaintiff." 1 Ch. Pl. 432. Where a declaration stated that the defendant contriving, &c., published a libel containing the false and scandalous matter following, without alleging that that matter was "of and concerning the plaintiff," and then set out the libel, which on the face of it did not manifestly appear to relate to the plaintiff, and there was no innuendo to connect it with the plaintiff; it was held upon a writ of error that the count was bad. *Clement* v. *Fisher*, 7 B. & C. 459.

Lord *Tenterden* said, in that case, " there is no averment that the particular matter is of and concerning the plaintiff, or any innuendo showing that it related to the plaintiff, or anything in the matter itself manifestly showing that it does relate to him." It seems to us that no words could render

it clearer to whom the defamatory expressions alluded than those used in the declaration. It is immaterial whether the words spoken impute an offence to the plaintiff in a direct manner, or indirectly, by such hints or modes of expression as are likely to convey the intended meaning to the persons to whom the words were addressed. Taking the words in the sense in which the rest of mankind would ordinarily understand them, it is for the jury to say whether in their minds they convey the idea imputed. *The King* v. *Watson*, 2 T. R. 206. Therefore where one man said of another, that " his character was infamous ; that delicacy forbade him from bringing a direct charge, but it was a male child who complained to him," such words were understood to mean a charge of unnatural practices, and to be sufficiently certain in themselves, without the aid of an innuendo. *Woolnorth* v. *Meadows*, 5 East. 463. So if a man were to write or say of I. N., " there is a vast difference between my character and his, I never robbed my master," or the like, it would be the same as if he had directly charged I. N. with having robbed his master. 2 Lev. 150 ; Com. Dig. Action on the case for defamation E. 8. And the same where the imputation is conveyed obliquely, Ibid. E. 1 ; or indirectly, Ibid. E. 7 ; or by way of question, Ibid. E. 2 ; conjecture, Ibid. E. 3 ; or exclamation, Ibid. E. 6 ; or by irony, 1 Hawk. ch. 73 § 4. If it appear evident upon the face of the libel, from the context, &c., what is meant, it is sufficient. 1 Hawk. ch. 73 § 5.

In *Hawkes* v. *Hawkey*, 8 East. 431, Lord *Ellenborough* says, " Where the words spoken do not in themselves naturally convey the meaning imputed by the innuendo, but also where they are ambiguous and equivocal, and require explanation by reference to some extrinsic matter to make them actionable, it must not only be predicated that such matter existed, but also that the words were spoken of and concerning that matter." This rule is found in Cowp. 682, and in Salk. 694. In *Van Vechten* v. *Hopkins*, 5 Johns.

220, *Van Ness*, J., explains the meaning of an averment of a *colloquium*, and of an innuendo. The use in pleading, of an averment, he says, is to ascertain that to the court which is generally or doubtfully expressed, so that the court may not be perplexed of whom or of what it ought to be understood, and to add matter to the plea to make doubtful things clear. A *colloquium* serves to show that the words were spoken in reference to the matter of the averment. An innuendo is explanatory of the subject matter sufficiently expressed before, and it is explanatory of such matter only ; for it cannot extend the sense of the words beyond their own meaning, unless something is put upon the record for it to explain. In *Barham's case*, 4 Coke R. 20, it was alleged that the defendant said of the plaintiff, " Barham burnt my barn," innuendo, " a barn with corn." The action was held not to lie, because burning a barn unless it had corn in it, was not felony. " But if in the introduction it had been averred that the defendant had burnt a barn full of corn, and that in a discourse about that barn the defendant had spoken the words charged in the declaration, an innuendo of its being the barn full of corn would have been good, for by coupling the innuendo in the libel with the introductory averment, it would have been complete." *De Grey*, C. J. *Rex* v. *Horne*, Cowp. 184. Here, the extrinsic fact that the plaintiff had a barn full of corn, is the averment. The allegation that the words were uttered in a conversation in reference to that barn is the *colloquium*, and the explanation given to the words thus spoken is the innuendo.

There is no obscurity in the present case, when it is examined by the light thrown upon it by these principles. The second count alleges that the defendant had a certain discourse " of and concerning the plaintiffs," and it requires no explanations nor innuendos to render it clear that the third count imputes the crime of adultery to the wife of the plaintiff.

*Judgment on the verdict.*